LOUISIANA HEALTH SERVICE &
INDEMNITY COMPANY, D/B/A BLUE CROSS
AND BLUE SHIELD OF LOUISIANA AND
HMO LOUISIANA, INC.

VERSUS

NARINDER M. GUPTA, M.D.

NO. 24-CA-264

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 814-003, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING

February 12, 2025

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Timothy S. Marcel

**REVERSED IN PART; AFFIRMED IN PART; REMANDED FOR**
**FURTHER PROCEEDINGS WITH INSTRUCTIONS**
    **SMC**
    **JGG**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Waquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY, D/B/A BLUE
CROSS AND BLUE SHIELD OF LOUISIANA, AND HMO LOUISIANA, INC.
 Gary M. Carter, Jr.
 Jessica W. Chapman
 Richard A. Sherburne, Jr.
 Sierra Ambrose
 Douglas M. Chapoton

COUNSEL FOR DEFENDANT/APPELLANT,
NARINDER M. GUPTA, M.D.
 Perry R. Staub, Jr.

**CHEHARDY, C.J.**

Defendant/plaintiff-in-reconvention, Narinder M. Gupta, M.D. ("Dr. Gupta"), appeals the trial court's November 9, 2023 judgment, and its January 24, 2024 amended judgment, sustaining the peremptory exceptions of no right of action, no cause of action, and prescription filed by plaintiff/defendant-in-reconvention, Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana, and HMO Louisiana, Inc. (collectively "Blue Cross"). For the following reasons, we reverse in part, affirm in part, and remand the matter to the trial court for further proceedings with instructions.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises from Dr. Gupta's allegedly improper billing practices for medical services he performed. Blue Cross alleges that Louisiana Health Service & Indemnity Company is a non-profit mutual insurance company, and HMO Louisiana is a health maintenance organization ("HMO"). In 2009, Dr. Gupta, a medical service provider, entered into a Physician Agreement with Blue Cross, which agreement obligated Dr. Gupta to, among other things: (1) prepare and maintain appropriate medical, financial, and administrative records of medical services rendered to patients and comply with record-keeping procedures; (2) provide Blue Cross with complete medical records and information reasonably required to process Dr. Gupta's claims, including accurate descriptions of services performed, with accompanying diagnoses and proper procedure codes; (3) render to patients only those services deemed medically necessary; (4) allow Blue Cross to conduct any audits of his facilities, policies, and procedures to ensure that charges to Blue Cross are correct and properly reflect services rendered; and (5) refund Blue Cross for any payments made based on erroneous or incomplete

information, and any payments for services Blue Cross later determines were not medically necessary.

The Physician Agreement expressly incorporated, by reference, the recoupment procedures set forth in La. R.S. 22:1838. Thus, Blue Cross alleges that, by signing the Physician Agreement, Dr. Gupta agreed he had thirty (30) days to submit a notice of appeal after receiving a written recoupment notice from Blue Cross. According to Blue Cross, in the event Dr. Gupta failed to appeal, La. R.S. 22:1838 and the Physician Agreement authorized Blue Cross to conclude that he had accepted its recoupment decision.

Pursuant to the Physician Agreement and La. R.S. 22:1838, on August 25, 2017 and December 13, 2017, Blue Cross allegedly performed an audit on Dr. Gupta's facility to ensure that he was complying with the terms and conditions of the agreement. After reviewing Dr. Gupta's records, Blue Cross contends that it identified numerous issues concerning Dr. Gupta's practices, including that Dr. Gupta's medical and billing records and patient notes were incomplete and illegible; he used improper coding for medical services and procedures;[1] his medical and billing records lacked proper documentation evidencing all of the medical services rendered during a patient's office visit; and, he rendered services to patients that were not "medically necessary." According to Blue Cross, due to Dr. Gupta's allegedly poor billing practices, lack of proper documentation, and rendering medically unnecessary services, it determined that it had overpaid 656 medical claims submitted by Dr. Gupta in the amount of $240,221.00.

On February 8, 2018, Blue Cross sent written correspondence to Dr. Gupta, sharing the findings of its audit, educating Dr. Gupta regarding sound billing practices, and requesting that he adopt those practices. By letter dated May 24,

---

[1] For example, while medical coding guidelines for injections includes office visits, Dr. Gupta billed the office visits separately at an additional, and allegedly improper, charge.

2018, counsel for Dr. Gupta requested a meeting with Blue Cross to discuss the reasons it had ceased paying Dr. Gupta's claims. In July 2018, Blue Cross agreed to meet with Dr. Gupta and his attorney to discuss the problematic issues identified with his practice.

Following this in-person meeting, on August 15, 2018, pursuant to a provision in the Physicians Agreement, Blue Cross sent Dr. Gupta, through Perry R. Staub, Jr. ("Mr. Staub"), the attorney that had accompanied Dr. Gupta to the in-person meeting, a written recoupment request, formally seeking a full refund of the overpayments totaling $240,222.31, accompanied by a breakdown of the specific claims, identifying the patient, date of the service rendered, and an explanation for the recoupment sought. No separate correspondence was sent to or received by Dr. Gupta, the healthcare provider, nor was he copied on the correspondence sent to Mr. Staub. Dr. Gupta allegedly failed to appeal Blue Cross' recoupment request within 30 days of the attorney's receipt thereof in accordance with the Physician Agreement and La. R.S. 22:1838, which Blue Cross claimed gave it the right to declare that Dr. Gupta agreed with and had accepted its recoupment decision. Blue Cross now avers that Dr. Gupta has failed to tender the full amount owed, and alleges that $226,562.62 remains unpaid.

When Dr. Gupta failed to tender the balance owed to Blue Cross to account for the recoupment, or otherwise compensate for his alleged breach of the Physician Agreement,[2] on January 15, 2021, Blue Cross filed suit pleading claims for breach of contract, unjust enrichment, detrimental reliance, declaratory relief, and recoupment under La. R.S. 22:1838. In response, on March 12, 2021, Dr. Gupta filed a motion to remove the matter to federal court contending the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et*

---

[2] Of the total of $240,222.31 Blue Cross claimed Dr. Gupta owed to it, $13,659.63 was offset as a result of recoveries made by Blue Cross.

*seq.*, and the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901, *et seq.*, completely preempted Blue Cross' claims. Conversely, Blue Cross argued it had asserted purely state claims that did not require resolution of any federal ERISA-related issues, and the federal court therefore lacked jurisdiction. After consideration, the federal court agreed, and on June 30, 2021, remanded the case to the state court.

Thereafter, on July 12, 2021, Dr. Gupta answered Blue Cross' petition for damages and declaratory relief denying all claims, and asserted a reconventional demand. In his reconventional demand, Dr. Gupta asserted claims for (1) breach of contract, (2) violation of Louisiana's recoupment statute, La. R.S. 22:1838, (3) violation of Louisiana prompt pay statutes, La. R.S. 22:1832 and La. R.S. 22: 1833, (4) ERISA and/or FEHBA violations relating to post-payment audit and recoupment activities, and (5) negligent misrepresentation and fraud.

Specifically, Dr. Gupta's reconventional demand alleges that the dispute between himself and Blue Cross involves his use of peripheral nerve blocks to provide pain relief for his chronic pain patients. Dr. Gupta avers that he has been using this technique for over 20 years to obtain more favorable medical outcomes for his patients. He claims that prior to 2017, Blue Cross and other provider networks fully reimbursed him for these treatments without questioning his medical decision-making, or his billing, coding, clerical, or administrative practices. According to Dr. Gupta, prior to 2017, all of his peripheral nerve block treatments had been fully reimbursed by Blue Cross. Nevertheless, Dr. Gupta alleges that reimbursement claims he filed during the period from August 2017 through January 2018 were withheld due to the audit conducted by Blue Cross, and during this period, many but not all of his requests for authorization for peripheral nerve block treatments were declined for the stated reason that "repetative [sic] use of peripheral nerve blocks is not supported by the evidence," and that "[a]ccording

to the documentation we received, we have determined that the services are not medically necessary." Dr. Gupta alleges that the letter he received from Blue Cross recited that if he disagreed with the decisions, he was entitled to (1) a peer-to-peer conversation with a Blue Cross physician; (2) receive "all documents used to review your case" which would "be provided free of charge;" and (3) "an explanation and copies of any guidelines and clinical rationale that supported our decision."

Dr. Gupta alleges that in February 2018, Blue Cross notified him that other previously withheld claims were being released for adjudication, with the exception of those claims submitted under CPT code 20550, *i.e.*, the peripheral nerve block injections. Dr. Gupta avers that Blue Cross advised him that "our internal review and that of external reviewers concluded that multiple units of 20550 are inappropriate, not warranted, and not documented in your medical records." He claims that the identity of the "external reviewers" was not disclosed. Blue Cross took issue with Dr. Gupta's office notes, stating that "the reviewers noted that your patient notes are incomplete and illegible."

Dr. Gupta alleges that he requested a peer-to-peer consultation with a Blue Cross physician; however, the only Blue Cross physician that discussed the matter with him was Blue Cross' acting medical director, Dr. Andrea Barrack, a geriatric physician, not a pain management specialist like himself. Dr. Gupta alleges that, in that meeting, Dr. Barrak advised him that Blue Cross' determination that his use of peripheral nerve block injection therapies was not "medically necessary" was based on a "German Study." Dr. Gupta avers that no additional information about the study, nor the study itself, was ever provided to him, despite Blue Cross' claim that there were the "documents used to review" his requests for authorization, and the "guidelines and clinical rationale that supported our decision" to decline the requested treatments as not being medically necessary. Dr. Gupta alleges that

there was in actuality no German Study or other documents supporting Blue Cross' medical decision making.

Dr. Gupta alleges that the written demand for recoupment on which Blue Cross' demand is predicated, dated August 15, 2018, was not directed or copied to him, and thus, no "written notification" was then provided, or has since been provided, to him as required by the Physician Agreement and La. R.S. 22:1838(B). Further, Dr. Gupta avers that the letter failed to identify the appropriate Blue Cross member and claim against which Blue Cross sought recoupment. Moreover, Dr. Gupta alleges that Blue Cross failed to provide written notification of its intent to recoup to his Blue Cross insured patients, as required by La. R.S. 22:1838(E), and failed to issue ERISA or FEHBA-compliant adverse benefit determinations for those patients covered by ERISA or FEHBA-governed health benefit plans and whose benefit payments Blue Cross sought to reduce.[3]

Dr. Gupta also alleges that the August 15, 2018 recoupment letter stated that pursuant to Article 4.9 of the Physician Agreement, Blue Cross was "permitted to recover from Dr. Gupta amounts due because of payments made in error or for inaccurate purposes," and that Blue Cross "formally requests the amount of $240,222.31 from Dr. Gupta." The letter also stated that, pursuant to Article 4.9, Dr. Gupta was required to send the "full amount of the refund" to Blue Cross "within 30 days of receipt of this letter." Dr. Gupta further alleges that Article 4.9 of the Physician Agreement actually states that Blue Cross' recoupment rights are "in accordance with the procedures outlined in [La. R.S.] 22:1838." Dr. Gupta avers that the recoupment statute does not authorize Blue Cross to seek monetary relief from the physician of the amount allegedly due to be recouped; rather, it

---

[3] According to Dr. Gupta, substantially all of the health care plans covering his patients and administered by Blue Cross, and against which Blue Cross claims the right to "cross-plan offset amounts" owed to him, represent "qualified plans" under ERISA and/or FEHBA, and that Blue Cross' "cross-plan offsetting scheme" violated ERISA and FEHBA by denying him the federally-mandated "full and fair review," and further, constituted "adverse benefit determinations" without the requisite notice.

limits Blue Cross' remedies to deducting such amounts from "future payments" due the contracting physician, "upon notice to PHYSICIAN of the amounts offset, the name of the Member, and relevant service dates," information which Dr. Gupta alleged he never received.

In response to Dr. Gupta's reconventional demand, Blue Cross filed peremptory exceptions of (1) no right of action as to Dr. Gupta's claims that Blue Cross' allegedly violated Louisiana's recoupment statute and prompt pay statutes; (2) no cause of action as to Dr. Gupta's claims for breach of contract and negligent misrepresentation and fraud; and (3) prescription as to Dr. Gupta's claims for alleged ERISA and FEHBA violations.

Blue Cross' peremptory exceptions came for hearing on October 16, 2023. At the close of the hearing, the trial court took the matter under advisement, and on November 9, 2023, issued a written judgment, with reasons, which: (1) granted Blue Cross' peremptory exception of no right of action, thereby dismissing Dr. Gupta's claims under La. R.S. 22:1838, Louisiana's recoupment statute, and La. R.S. 22:1832, Louisiana's prompt pay statute, with prejudice; (2) granted Blue Cross' peremptory exception of no cause of action, thereby dismissing Dr. Gupta's claims for breach of contract with prejudice; (3) granted Blue Cross' exception of no cause of action as to Dr. Gupta's claims for negligent misrepresentation and fraud, giving Dr. Gupta twenty (20) days to amend his reconventional demand to state a particularized cause of action for fraud; and (4) granted Blue Cross' peremptory exception of prescription as to Dr. Gupta's claims asserting ERISA-related violations.[4]  This timely appeal followed.

**ASSIGNMENTS OF ERROR**

---

[4]     The trial court issued an amended judgment on January 24, 2024 to correct a typographical error in its November 9, 2023 judgment that referred to the ERISA-related claims as "Count I" of Dr. Gupta's reconventional demand, rather than Count IV.

On appeal, Dr. Gupta contends the trial court erred: (1) in finding that he failed to state a cause of action for breach of contract; (2) in finding that he had no right of action against Blue Cross for alleged violations of Louisiana's recoupment statute, wherein Dr. Gupta sought restoration of funds already recouped by Blue Cross; (3) in dismissing his ERISA-related claims on grounds that his claim for payment of his services to ERISA patients were prescribed; and (4) in dismissing his claims for negligent misrepresentation and fraud on grounds that Dr. Gupta had failed to allege fraud with particularity.

**DISCUSSION**

### A. *Trial Court's Grant of Blue Cross' Exception of No Cause of Action Dismissing Dr. Gupta's Claims for Breach of Contract and Negligent Misrepresentation and Fraud*

#### 1. Appellate Standard of Review and Applicable Law

When an exception of no cause of action is granted, we review the trial court's judgment under a *de novo* standard of review because the exception raises a question of law, and the lower court's decision is necessarily based solely on the sufficiency of the petition. *Gordon v. State, Division of Administration, Office of Community Development – Disaster Recovery*, 23-366 (La. App. 5 Cir. 3/27/24), 384 So.3d 1138, 1140. A cause of action, for purposes of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert an action against the defendant. *Grubbs v. Haven Custom Furnishings, LLC*, 18-710 (La. App. 5 Cir. 5/29/19), 274 So.3d 844, 847. The function of the peremptory exception of no cause of action is to question whether the law affords a remedy to anyone under the factual allegations of the petition. *Id.* at 848. The exception's function is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. *Id.* The exception is triable on the face of the petition and any attached documents

and, for purposes of resolving issues raised by the exception, the well-pleaded facts in the petition must be accepted as true.[5] *Gordon*, 384 So.3d at 1141.

No evidence may be introduced to support or controvert the exception raising the objection of no cause of action. La. C.C.P. art. 931. Because Louisiana utilizes a system of fact pleading, it is not necessary for a plaintiff to plead a theory of the case in the petition; however, mere conclusions of the plaintiff unsupported by the facts do not set forth a cause of action. *Palowsky v. Campbell*, 21-358 (La. App. 5 Cir. 5/30/22), 337 So.3d 567, 572. The pertinent inquiry is whether, in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief. *I E C I, LLC v. South Central Planning & Dev. Comm'n, Inc.*, 21-382 (La. App. 5 Cir. 2/23/22), 336 So.3d 601, 611. A petition should not be dismissed for failure to state a cause of action, unless it appears beyond a doubt the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. *Grubbs*, 274 So.3d at 847. Whether the plaintiff can prove the allegations set forth in the petition is not determinative of the exception of no cause of action, and the court may not go beyond the petition to the merits of the case. *Scanlan v. MBF of Metairie, LLC*, 21-323 (La. App. 5 Cir. 3/23/22), 337 So.3d 562, 565.[6]

---

[5]     It is clear from the trial court's written reasons for judgment that, in ruling on the exception of no cause of action as to Dr. Gupta's claim that Blue Cross breached the Physician Agreement, it actually considered the Physician Agreement, which was attached to Blue Cross' petition for damages and which formed the basis of Dr. Gupta's reconventional demand.

[6]     We note that in Dr. Gupta's brief on appeal, he erroneously asserts that "if the allegations of the petition state a cause of action as to *any part* of the demand, the exception must be overruled[,]" citing *Pitre v. Opelousas General Hospital*, 530 So.2d 1151, 1162 (La. 1988) and *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234-1238 (La. 1993). However, in 1996, the Louisiana Code of Civil Procedure was amended in 1996 to expressly provide for partial exceptions of no cause of action. *Palowsky v. Campbell*, 21-358 (La. App. 5 Cir. 3/30/22), 337 So.3d 567, 572. Partial exceptions of no cause of action that dismiss one or more but less than all of the actions, claims, demands, issues, or theories against a party are expressly authorized in Louisiana Code of Civil Procedure. *See* La. C.C.P. art. 1915(B)(1) and La. C.C.P. art. 934. As noted in the Official Comment to Article 934, the Code of Civil Procedure was amended in 2003 "to clarify that pursuant to Article 1915(B) the trial court can now render a partial judgment sustaining an exception in part as to one of more but less than all of the actions, claims, demands, issues, or theories in the case." Prior to these amendments, Louisiana courts had developed a general rule that if a petition stated a cause of action as to any ground or portion of the demand, the exception of no cause of action should generally be overruled. *Everything on Wheels Subaru, Inc.*, 616 So.2d at 1238 (La. 1993). The purpose of such a rule was to prevent a multiplicity of appeals which forces an appellate court to consider the merits of the action in a piecemeal fashion. *Id.*

## 2. Dr. Gupta's Breach of Contract Claim

In his reconventional demand, Dr. Gupta asserts that Blue Cross breached the Physician Agreement by: (1) failing to participate after request in a true "peer to peer" conversation or review; (2) failing to provide after request "all documents used to review" his medical decision-making; (3) failing to provide after request "an explanation and copies of any guidelines and clinical rationale that supported" the medical necessity decisions it reached; (4) rendering clinical medical treatment decisions in violation of Article 2.15 of the Physician Agreement; (5) failing to provide him or its insured proper notice of its recoupment decisions, as required under Article 4.9 of the Physician Agreement; (6) engaging in cross-plan offsetting despite the fact that neither Article 4.9 of the Physician Agreement nor the terms and conditions of any Blue Cross health plans providing coverage to his patients permit cross-plan offsetting; (7) seeking monetary relief from him by letter and by suit, in violation of Article 4.9 of the Physician Agreement, which by its terms limits Blue Cross' remedies to deducting such amounts from future payments; and (8) such other breaches and failures to abide by the terms and conditions of the Physician Agreement as shall be determined through the discovery process and proven at trial.

In sustaining Blue Cross' exception of no cause of action, the trial court determined that Dr. Gupta failed to state a cause of action for violation of the Physician Agreement, which incorporates the recoupment process set forth in La. R.S. 22:1838, which provides, in pertinent part:

> A.    As used in this Section, "recoupment" shall mean a reduction, offset, adjustment, or other act to lower or lessen the payment of a claim or any other amount owed

to a health care provider for any reason unrelated to that claim or other amount owed to a health care provider.

B.    Prior to any recoupment unrelated to a claim for payment of medical services provided by a health care provider or any other amount owed by a health insurance issuer to a health care provider, *the health insurance issuer shall provide the health care provider* written notice that includes the name of the patient, the date or dates or health care services rendered, and an explanation of the reason for recoupment.  A *health care provider shall* be allowed thirty days *from receipt of written notification* of recoupment to appeal the health insurance issuer's action and to provide the health insurance issuer the name of the patient, the date or dates of health services rendered, and an explanation or reason for the appeal.

C. (1) When a health care provider fails to respond timely and in writing to a health insurance issuer's written notification of recoupment, the health insurance issuer may consider the recoupment accepted.  [Emphasis supplied.]

Specifically, the trial court found that "Dr. Gupta does not allege that he responded timely or in writing to [Blue Cross'] recoupment decision or that he appealed [Blue Cross'] recoupment decision.  Accepting all allegations of the petition as true, [the trial court determined that] Dr. Gupta has no remedy under the allegations asserted."  We disagree.

On appeal, Dr. Gupta alleges, and Blue Cross does not dispute, that the August 15, 2018 letter from Blue Cross—which is the triggering event to his right to appeal, and/or the insurer's right to begin any recoupment procedures in accordance with the contract—was sent to the attorney who accompanied Dr. Gupta to the original meeting at Blue Cross, Mr. Staub, and not to Dr. Gupta personally.  As a result of this failure to abide by the strict wording of the statute, Dr. Gupta contends that Blue Cross cannot establish that he was given the requisite notice, under either the Physician Agreement or the recoupment statute.  Because Blue Cross allegedly "utterly disregarded the statutory/contractual procedure for

recoupment," Dr. Gupta alleges that he was under no obligation to respond timely or in writing to Blue Cross' recoupment decision or to appeal Blue Cross' medical determination. Consequently, Dr. Gupta avers he has stated a valid cause of action for Blue Cross' breach of the Physician Agreement, particularly as they relate to the deficiencies in the recoupment process undertaken by Blue Cross and its failure to strictly adhere to the provisions of La. R.S. 22:1838 and the Physician Agreement.

In response, Blue Cross avers that it was prohibited by the Louisiana Code of Professional Responsibility from forwarding the recoupment letter directly to Dr. Gupta since legal counsel, Mr. Staub, had appeared with Dr. Gupta at the July 2018 in-person meeting with Blue Cross and had, at that time, represented himself to be counsel for Dr. Gupta. Consequently, Blue Cross argues, and the trial court agreed, that Dr. Gupta did receive the requisite written notice of recoupment as required by both the Physician Agreement and the statute, and as such, Dr. Gupta was obligated to timely respond to Blue Cross in writing within thirty days of his receipt of its recoupment decision or to appeal Blue Cross' recoupment decision. Because Dr. Gupta indisputably did not respond timely, Blue Cross contends that, pursuant to La. R.S. 22:1838(C)(1) and the terms of the Physician Agreement, it had the statutory and contractual authority to deem its recoupment decision as final, and that Dr. Gupta is now foreclosed from "re-litigat[ing] the issues he allegedly has with the recoupment process through a breach of contract claim." We disagree.

A review of the letter sent by Blue Cross to Mr. Staub evidences that it did not originate from Blue Cross' legal counsel, but rather, was authored and sent by an adjuster for Blue Cross. Thus, contrary to Blue Cross' assertions, there was no violation of professional responsibility at risk by Blue Cross sending the recoupment letter directly to Dr. Gupta, the healthcare provider.

Louisiana Revised Statute 22:1838, as set forth above, provides a specific method for health insurance issuers to recoup benefits it has paid to a health care provider for services rendered by the health care provider to his/her/its patient(s) that the health insurance issuer later determines to be not medically necessary. We note that jurisprudential review of the requirements of La. R.S. 18:1838 is *res novo*. Regarding the mechanism by which a health insurance issuer, such as Blue Cross, can assert a claim for recoupment of benefits previously paid, La. R.S. 22:1838 specifically requires the "***the health insurance issuer shall provide the health care provider*** written notice" that provides, among other things, "an explanation of the reason for the recoupment." La. R.S. 22:1838(B). [Emphasis supplied.] Thereafter, "[a] ***health care provider shall*** be allowed thirty days ***from receipt of written notification*** of recoupment to appeal the health insurance issuer's action …" *Id*. [Emphasis supplied.] Moreover, it is only when "a health care provider fails to respond timely and in writing to a health insurance issuer's written notification of recoupment," can the health insurance issuer consider the recoupment accepted. La. R.S. 22:1838(C)(1).

Given the special nature of the health insurance issuer's right to deem a recoupment determination accepted if not challenged in writing within thirty days as required by La. R.S. 22:1838(C), that right must be strictly construed against the health insurance issuer and in favor of the health care provider. Thus, there must be strict compliance with the provisions of the recoupment statute. *See e.g.*, *Simms Hardin Co., LLC v. 3901 Ridgelake Drive, L.L.C.*, 12-469 (La. App. 5 Cir. 5/16/13), 119 So.3d 58, 66, *writ denied*, 13-1423 (La. 9/27/13), 123 So.3d 726; *Buck Town Contractors & Co. v. K-Belle Consultants, LLC*, 15-1124 (La. App. 4 Cir. 4/16/16), 216 So.3d 981, 983-84, *writ denied*, 16-831 (La. 9/6/16), 205 So.3d 915. In short, the recoupment statute constitutes a special legislative provision in derogation of general contract law, and must be strictly construed. *See Tucker v.*

*Seaside Behavioral Center, LLC*, 23-132 (La. App. 5 Cir. 12/27/23), 378 So.3d 879, 885, *writ denied*, 24-140 (La. 3/19/24), 381 So.3d 713.

Clearly, before a health insurance issuer can consider the proposed recoupment demand accepted, it must meet the requirements of La. R.S. 22:1838(B). Here, it is undisputed that Blue Cross did not notify Dr. Gupta directly in writing of its recoupment decision and/or its intent to cross-plan offset until the balance of the amount it deemed it was owed was satisfied. Adequate notice is an elementary and fundamental requirement of due process. *See Boniello v. Richardson*, 56,023 (La. App. 2 Cir. 12/18/24), 2024 WL 5149920, --So.3d--; *Roman v. LRASIF Claims Management*, 11-393 (La. App. 5 Cir. 12/13/11), 81 So.3d 895, 899. The requirements of due process vary according to circumstance, as it is, by nature, an imprecise ideal. *Lange v. Orleans Levee Board Dist.*, 10-140 (La. 11/30/10), 56 So.3d 925. "The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).

*C*onsidering the clear and plain language of La. R.S. 22:1838(B) and (C), and construing it strictly due to its provisions being in derogation of general contract law, we find that fundamental fairness demands that Blue Cross' failure to provide Dr. Gupta, *the health care provider*, with written notice of its intent to recoup benefits for pre-authorized services previously rendered—essentially depriving Dr. Gupta of his due process right to notice and the opportunity to respond—results in a recoupment decision that never became final. As such, it is subject to challenge. Further, because Dr. Gupta was not provided with the requisite notice of the recoupment procedure in accordance with the statute, the claims in his reconventional demand seeking a return of the monies (over

$13,000.00) improperly appropriated by Blue Cross (due to its alleged failure to follow the statute or the Physician Agreement), and for recovery "for numerous other alleged contractual breaches not discussed in the District Court's judgment[,]" should likewise not have been dismissed by the trial court on this exception.

For these reasons, we find the trial court erred in sustaining Blue Cross' exception of no cause of action as to Dr. Gupta's reconventional demand for breach of contract.

**Dr. Gupta's Claims for Fraud and Negligent Misrepresentation**

In his reconventional demand, Dr. Gupta alleged that Blue Cross, "through oral and written statement, act, and deed," made material misrepresentations to Dr. Gupta regarding the medical necessity of the "underlying treatments and procedures," *i.e.*, the peripheral nerve block injections. Dr. Gupta alleged that Blue Cross also made material misrepresentations to him regarding the existence, extent, and scope of coverage available for those treatments and procedures he rendered to his Blue Cross insureds under its health care plans, as well as to his rights to reimbursement for those services. Dr. Gupta further alleged that by improperly cross-plan offsetting reimbursements previously paid to Dr. Gupta, Blue Cross "negligently misrepresented and made fraudulent representations concerning the medical necessity of the [peripheral nerve block injections], and the existence and extent of the coverage available to Blue Cross insureds, and concerning Dr. Gupta's rights" under the Physician Agreement.

According to Dr. Gupta, he accepted Blue Cross patients based on Blue Cross' representations concerning its coverage and rate of reimbursement for the injections, and made business policy and related decisions based on the promised rate of reimbursement, or the original reimbursements issued to him by Blue Cross, reimbursements Blue Cross now seeks to recoup. Dr. Gupta alleged that Blue

Cross personnel "acted with the intent to deceive" him, by reimbursing and finalizing claims for the injections when it always intended to reopen and recoup, and/or cross-plan offset, on the basis that the treatments were medically unnecessary based on a German study that it subsequently refused to produce, a study which Dr. Gupta intimated does not exist.

In Louisiana, fraud is defined as "a misrepresentation or suppression of truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. art. 1953. Fraud may also result from silence or inaction. *Id.* In order to prevail in an action for fraud due to silence or suppression of the truth, there must be a duty to speak or disclose information. *Renton Properties, LLC v. 213 Upland, LLC*, 20-133 (La. App. 5 Cir. 10/5/20), 304 So.3d 1083, 1093, *writ denied*, 20-1395 (La. 1/26/21), 309 So.3d 345. Additionally, fraud must be pled with particularity and mere conclusions of fraud, "unaccompanied by formal allegations setting forth with particularity the circumstances alleged to constitute fraud" are insufficient. *Emery v. Ben*, 24-18 (La. App. 4 Cir. 5/13/24), 390 So.3d 952, 960; *see also* La. C.C.P. art. 856. Moreover, to state a cause of action under the theory of negligent misrepresentation, a plaintiff must show that there is a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused plaintiff damage. *Becnel v. Advocare Intern., L.P.*, 14-521 (La. App. 5 Cir. 12/16/14), 167 So.3d 97, 101.

In granting Blue Cross' exception of no cause of action as to Dr. Gupta's claims for negligent misrepresentation and fraud, the trial court determined that the allegations contained in Dr. Gupta's reconventional demand "fail to set forth with particularity the circumstances constituting fraud. Dr. Gupta's claims are conclusory allegations which do not contain specific allegations regarding the

alleged material misrepresentations."[7] We agree. In a nutshell, we find that Dr. Gupta alleges in a conclusory fashion that Blue Cross made material misrepresentations regarding reimbursement coverage and reimbursement amounts, and that Blue Cross intended to seek recoupment of the reimbursements formerly made. Dr. Gupta also makes conclusory allegations that by engaging in cross-plan offsetting, Blue Cross made fraudulent and/or negligent misrepresentations regarding the medical necessity of the peripheral nerve block injections with the intent to deceive him.

In his brief on appeal, Dr. Gupta avers that his reconventional demand expended "many Paragraphs explaining the frauds perpetrated by [Blue Cross]: waiting until August 2018 to issue a recoupment decision, by which time the ERISA beneficiaries it has a fiduciary duty to safeguard can no longer assert claims for benefits; altering the medical necessity standard after 20 years of approving procedure payments and then directing the application of this 'new' standard unevenly, with many claims still be approved for payment, and cloaking the new standard as reflected in a German clinical study in secrecy." We find that these assertions, without more specific information, do not state with requisite particularity, how Blue Cross allegedly committed fraud or intentionally deceived Dr. Gupta and, thus, are insufficient to state a cause of action for fraud. Moreover, we find that Dr. Gupta's allegations that Blue Cross "consistently assured" him that peripheral nerve block injections were a "covered service," is insufficient to state a cause of action for negligent misrepresentation under the circumstances averred by Dr. Gupta—that Blue Cross sought recoupment of reimbursements paid based on the determination that Dr Gupta rendered this "covered service" to patients when it was "medically unnecessary," based on his incomplete and

---

[7] The trial court gave Dr. Gupta twenty (20) days to amend his reconventional demand to state with more particularity the circumstances he claimed constituted fraud, and held that his failure to amend would result in dismissal of the fraud claim.

unsubstantiated notes, and its reliance on a German study indicating repetitive peripheral nerve block injections could be harmful to patients.

Upon *de novo* review, even accepting the allegations set forth in Dr. Gupta's reconventional demand as true, we find Dr. Gupta has failed to state a cause of action for fraud and/or negligent misrepresentation against Blue Cross. Accordingly, we find the trial court was correct in sustaining the exception of no cause of action as to Dr. Gupta's claims for fraud and/or negligent misrepresentation. Moreover, like the trial court, we find that the grounds of the objection raised in Blue Cross' exception of no cause of action could be removed by amendment of Dr. Gupta's reconventional demand to allege with particularity the circumstances he contends constituted fraud by Blue Cross. *See* La. C.C.P. art. 934. In this regard, Dr. Gupta urges that he should be permitted to propound discovery to Blue Cross designed to identify the involved persons and to uncover the specific conceits that caused his damage. Therefore, we remand this matter to the trial court with instructions that the trial court issue an order allowing Dr. Gupta a reasonable amount of time to conduct discovery, and thereafter, to amend his reconventional demand to state a cause of action against Blue Cross within a timeframe to be set by the trial court. *Id.*

### B. *Trial Court's Grant of Blue Cross' Exception of No Right of Action Dismissing Dr. Gupta's Claim for Violations of Louisiana's Recoupment Statute, La. R.S. 22:1838*

#### 1. Appellate Standard of Review and Applicable Law

The standard of appellate review for the exception of no right of action is *de novo*. *Grubbs*, 274 So.3d at 850. An exception of no right of action assumes that the petition states a cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. *Lemmon Law Firm, LLC v. School Bd. of Parish of St. Charles*, 13-376 (La. App. 5 Cir. 12/12/13), 131 So.3d 231, 235. An

action can only be brought by a person having a real and actual interest which he asserts. *Grubbs*, 274 So.3d at 849. The peremptory exception of no right of action tests whether the individual bringing an action has the capacity or legal interest in judicially enforcing the right asserted. *Id*.; *see also* La. C.C.P. art. 927(A)(5). A party has an actionable right, and consequently standing, if it can be said that the party has a legally protectable and tangible stake in the litigation. *First Bank and Trust v. Duwell*, 10-481 (La. App. 5 Cir. 12/14/10), 57 So.3d 1076, 1078. The exception of no right of action tests whether the plaintiff has a "real and actual interest" in the action, but does not raise questions of the plaintiff's ability to prevail on the merits or whether the defendant may have a valid defense. *Roubion Shoring Company, LLC v. Crescent Shoring, L.L.C.*, 16-540 (La. App. 5 Cir. 5/17/17), 222 So.3d 921, 926.

At the hearing on the exception of no right of action, the exception may be submitted on the pleadings, or evidence may be introduced in either support of or to controvert the objection raised when the grounds thereof do not appear from the petition. *Grubbs*, 274 So.3d at 850. The burden of establishing the exception of no right of action is on the exceptor. *Id*.

### 2. Dr. Gupta's Right of Action for Violations of La. R.S. 22:1838

Dr. Gupta's reconventional demand asserts a claim against Blue Cross for violations of La. R.S. 22:1838, Louisiana's recoupment statute, including specifically the notice provisions of La. R.S. 22:1838(B) and (E).[8] Dr. Gupta's reconventional demand also avers that "[a]s a result of Blue Cross' improper acts and practices, Blue Cross has retained and continues to retain and has offset and

---

[8] *See* La. R.S. 22:1838(B), *supra*. La. R.S. 22:1838(E) provides that "[i]f the recoupment directly affects the payment responsibility of the insured, the health insurance issuer shall provide at the same time a revised explanation of benefits to the health care provider and the covered person for whose claim the recoupment is being made. Unless the recoupment of a health insurance claim payment directly affects the payment responsibility of the insured, such recoupment shall not result in any increased liability of the insured."

continues to offset, payments for medical services rightfully belonging to Dr. Gupta" and is "obligated to restore all such funds to Dr. Gupta … ." The trial court sustained Blue Cross' exception of no right of action on the basis that "[t]here is no private right of action under the recoupment statute. … La. R.S. 22:1837 vests enforcement solely with the Louisiana Commissioner of Insurance."

We first note that La. R.S. 22:1838 *does not* give healthcare providers, such as Dr. Gupta, a private right of action against a health insurance issuer, such as Blue Cross, for alleged violations of the statute. Rather, the violations provision of the Medical Claims Subchapter of the Louisiana Insurance Code gives the Louisiana Commissioner of Insurance the exclusive authority to enforce violations of this subchapter. Specifically, La. R.S. 22:1837 provides, in pertinent part, that "Whenever the *commissioner* has reason to believe that any health insurance issuer is not in full compliance with the requirements of this Subpart, *he shall* notify such insurer in accordance and compliance with R.S. 49:961 and, after notice *the commissioner shall* issue and cause to be served an order requiring the health insurance issuer to cease and desist from any violation and order any one or more of the following …[,]" monetary penalties or suspension or revocation of license. [Emphasis supplied.] Thus, pursuant to the express language of the statute, any enforcement of such actions for violations of the statute is vested solely with the Commissioner of Insurance.

On appeal, however, *conceding that La. R.S. 22:1838 does not convey to him a private right of action*, Dr. Gupta avers the trial court misinterpreted his claim and suggests that he is not asserting a claim for relief *under* La. R.S. 22:1838. Rather, Dr. Gupta contends that his claim is based on Blue Cross' alleged "numerous procedural violations" of the recoupment statute, and that Blue Cross' alleged failure to abide by the terms of the statute and the Physician Agreement incorporating it, should result in negating the improper offsetting activities of Blue

Cross and a return of those funds to him. In short, Dr. Gupta alleges that Blue Cross' non-compliance with the statute vitiates the offset and results in the return of those funds to him.

Accepting Dr. Gupta's explanation on appeal as to the nature of his claim against Blue Cross for its alleged "failure to abide by" the notice requirements of La. R.S. 22:1838 "and the Physician Agreement incorporat[ing]" the statute and those notice requirements, we find that Dr. Gupta's claim against Blue Cross for a return of the amounts it allegedly improperly offset, is, in essence, part and parcel of his claim against Blue Cross for its alleged breach of the Physician Agreement. Additionally, his claim against Blue Cross for its alleged failure to comply with the requirements of the statute for seeking recoupment is, more accurately, a defense to Blue Cross' claim against Dr. Gupta seeking recoupment. Thus, as there is no private right of action on behalf of a healthcare provider against a healthcare insurer for relief under the recoupment statute, we find the trial court properly sustained Blue Cross' exception of no right of action with respect to the claim he made under La. R.S. 22:1838.

### C. *Trial Court's Grant of Blue Cross' Exception of Prescription as to Dr. Gupta's Claims for ERISA-related Violations*

#### 1. Appellate Standard of Review and Applicable Law

The function of the peremptory exception of prescription is to have the plaintiff's action declared legally nonexistent, or barred by the effect of law, and hence, this exception tends to dismiss or defeat the action. La. C.C.P. art. 927 and 923, respectively; *Ruffins v. HAZA Food of Louisiana, LLC*, 21-619 (La. App. 5 Cir. 5/25/22), 341 So.3d 1259, 1262. The statutes involving prescription are strictly construed against prescription and in favor of the obligation sought to be extinguished. *Bailey v. Khoury*, 04-620 (La. 1/20/05), 891 So.2d 1268, 1275.

Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception, including prescription. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. When a cause of action is prescribed on its face, the burden is upon the plaintiff to show that the running of prescription was suspended or interrupted in some manner. *In re Singleton*, 19-578 (La. App. 5 Cir. 9/2/20), 303 So.3d 362, 366-67.

At the trial of a peremptory exception of prescription, "evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La. C.C.P. art. 931; *Ruffins*, 341 So.3d at 1262. In the absence of evidence, the exception of prescription must be decided on the facts alleged in the petition, which are accepted as true. *Id.* But the latter principle applies only to properly pleaded material allegations of fact, as opposed to allegations deficient in material detail, conclusory factual allegations, or allegations of law. *Woods v. Cousins*, 12-100 (La. App. 5 Cir. 10/16/12), 102 So.3d 977, 979, *writ denied*, 12-2452 (La. 1/11/13), 107 So.3d 617.

The appellate standard of review of a trial court's ruling on a peremptory exception of prescription turns on whether evidence is introduced at the hearing. *Ruffins*, 341 So.3d at 1262. When no evidence is introduced, appellate courts review judgments sustaining an exception of prescription *de novo*, accepting the facts alleged in the petition as true. *DeFelice v. Federated Nat'l Ins. Co.*, 18-374 (La. App. 5 Cir. 7/9/19), 279 So.3d 422, 426. However, when evidence is introduced at a hearing on an exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard. *Id.* The record shows that the parties did not introduce any evidence at the hearing on Blue Cross' exception of prescription.

## 2. Dr. Gupta's Claims Against Blue Cross for ERISA-Related Violations

In his reconventional demand, Dr. Gupta alleged that one or more of the Blue Cross member health plans at issue in this case were employer-sponsored benefit plans covered by the Employer Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* In addition, Dr. Gupta averred that one or more of the Blue Cross member health plans at issue in this case were governed by the Federal Employer Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901, *et seq.* Dr. Gupta alleged that when administering such plans, Blue Cross was subject to ERISA and/or FEHBA, and the governing regulations, as an entity that issues, insures, and administers the employee benefit plans through which Dr. Gupta's patients received their health insurance. He alleged that FEHBA plans utilize the ERISA regulations and standards as persuasive.

ERISA imposes statutory duties on fiduciaries that relate to the proper management, administration, and investment of fund assets, with an eye toward ensuring the benefits authorized by the plan are ultimately paid to participants and beneficiaries. 29 U.S.C. § 1101, *et seq.* ERISA provides that a "participant" or "beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). To have standing to bring a claim under ERISA § 502(a)(1)(B), a plaintiff must be a "participant" or "beneficiary" of an ERISA plan. 29 U.S.C. § 1132(a)(1)(B). Because a health care provider has no independent right of standing to seek redress under ERISA, such a provider must be capable of classification as a participant or a beneficiary to invoke ERISA. *Dallas Cty Hosp. Dist. v. Associates' Health & Welfare Plan*, 293 F.3d 282, 285 (5th Cir. 2002). Dr. Gupta maintains that he possesses standing to bring his reconventional demand against Blue Cross under §

502(a)(1)(B), for alleged violations in its processing of patients' claims, as an assignee of a participant or beneficiary.

Dr. Gupta's claim to derivative ERISA standing is predicated on the alleged "Assignment of Medical Benefits" executed in his favor by his patients, some of whom *may* be "participants" or "beneficiaries."[9] Dr. Gupta contends that he provides services to his patients and thereafter pursues reimbursement for those services from Blue Cross, pursuant to a standard "Assignment of Benefits" form endorsed by each patient. He alleges that the Assignment of Benefits form confers standing upon him to pursue claims against Blue Cross, in its fiduciary capacity and as a plan administrator, under ERISA. He further contends that the Blue Cross patient remains financially at risk for certain unreimbursed amounts, including those services deemed by Blue Cross to be medically unnecessary, or otherwise not a covered service.[10]

In the instant case, we note that it is unknown from the record whether Dr. Gupta, in fact, has derivative standing to bring all, or even some, of his ERISA-related claims against Blue Cross—*i.e.*, whether the patients, who received peripheral nerve block injections that were later determined by Blue Cross to be medically unnecessary and for which recoupment is sought, were subject to an employee benefit plan, or whether the patients' plans at issue contained an enforceable anti-assignment provision which would preclude Dr. Gupta from having standing to bring his ERISA-related claims against Blue Cross.

---

[9] ERISA defines a "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). "Beneficiary" means "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

[10] Some health plans, however, contain anti-assignment provisions that purport to prohibit a participant from assigning his rights under the plan. Where a plan contains an anti-assignment provision, the provision is enforceable, and the assignment is ineffectual. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352 (5th Cir. 2002). ERISA leaves the assignability of benefits to the free negotiations and agreement of the contracting parties. *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield*, 49 F.3d 1460, 1464-65 (10th Cir. 1995).

In his reconventional demand, Dr. Gupta's ERISA-related claims are predicated on his allegations that from August 2017 through January 2018, his reimbursement claims were withheld due to an audit by Blue Cross. He further alleged that during this period, and thereafter, many, but not all, of his requests for authorization for peripheral nerve block treatments were declined by Blue Cross on the stated grounds that repetitive use of peripheral nerve blocks is not supported by the evidence, and that, according to the documentation Blue Cross received, these services rendered by Dr. Gupta were not medically necessary.

Dr. Gupta alleged that in February 2018, Blue Cross notified him that the previously withheld claims were being released for adjudication with the exception of those claims submitted under CPT code 20550 (nerve block injections). A list of the specific patients' claims under review were given to him at that time. Dr. Gupta alleged that Blue Cross notified him in February 2018 that its internal review, and that of external reviewers, concluded that multiple units of 20550 are inappropriate, not warranted, and not documented in Dr. Gupta's medical records, and that reviewers noted that his patient notes were incomplete and illegible. He alleged that Blue Cross sent him a form letter which recited that if he disagreed with the decision, he was entitled to (1) a peer-to-peer conversation with a Blue Cross physician; (2) receive "all documents used to review your case" which would "be provided free of charge;" and (3) "an explanation and copies of any guidelines and clinical rationale that supported our decision."

Dr. Gupta alleged that in July 2018, he requested peer-to-peer counseling; however, the only physician who met with him was Blue Cross' acting medical director, whose specialty was in geriatrics and not pain management. Further, he alleged that he was referred to a German Study as the basis upon which Blue Cross, in part, made its determination that his overuse of peripheral nerve block injection therapies were "not medically necessary." However, he averred that Blue

Cross failed to provide him with a copy of the purported German Study, or any other guidelines and rationale that supported its decision to decline the requested treatments.

Dr. Gupta alleged that in its August 15, 2018 letter seeking recoupment for the 656 claims for peripheral nerve block injections that it deemed were not necessary, Blue Cross violated ERISA and/or FEHBA by failing to send written notification directly to him, and by failing to issue ERISA or FEHBA-compliant adverse benefit determinations for those patients covered by ERISA or FEHBA-governed health benefit plans and whose benefit payments Blue Cross sought to reduce.

Dr. Gupta alleged that, as an ERISA/FEHBA fiduciary, citing to 29 U.S.C. § 1106(b)(1) and (2), Blue Cross violated ERISA and/or FEHBA by (1) failing to provide him "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133; (2) failing to use reasonable claims procedures (*i.e.*, using improper, invalid, and undisclosed policies and practices related to peripheral nerve block injection therapies, withholding payments for properly submitted claims, and by cross-plan offsetting (*i.e*, offsetting amounts allegedly overpaid by one health plan against amounts due for medical services provided by Dr. Gupta to a patient covered under a separate and different health plan)); and ()3 by failing to provide necessary notices and disclosures (*i.e.*, failing to inform its insureds of adverse benefit determinations, or the right to appeal such determinations).  As a result of Blue Cross' alleged violations, Dr. Gupta alleged that "any appeals not taken ... should be excused, as futile, and all benefits offset, diverted or retained by Blue Cross should be returned" to him.

29 U.S.C. § 1113 provides that "[n]o action shall be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to violation of this part, after the earlier

of ... (1) six years after (A) of the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach of violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Dr. Gupta contends, however, that the trial court erred in applying the three-year prescriptive period set forth in Section 1113, relating to the limitation of actions for claims for breach of a fiduciary duty; rather, he contends that Louisiana's ten-year prescriptive period for breach of contract claims applies, because his reconventional demand expressly pleaded a cause of action for breach of contract. We disagree. A review of Dr. Gupta's reconventional demand as it relates to his claims under ERISA and/or FEHBA show that they stem from Blue Cross' alleged breach of fiduciary duties, wrongful actions, and violations of ERISA regulations in its processing of claims.

Further, we find that Dr. Gupta's contention that, because the gravamen of his complaint is centered on Blue Cross' alleged ERISA violations—by engaging in cross-plan offsetting without complying with the procedural mandates of ERISA and FEHBA and without demonstrating that the underlying benefit plans authorized cross-plan offsetting—the correct date from which prescription should begin to run is no earlier that August 15, 2018, when Blue Cross announced its intention to cross-plan offset against Dr. Gupta's medical bills, is without merit. While it is true that Dr. Gupta does seek a return of the amounts he contends Blue Cross wrongfully recovered by cross-plan offsetting, Dr. Gupta's reconventional demand continuously refers to Blue Cross' alleged breach of fiduciary duties owed under ERISA and/or FEMA due to its failure to provide full and fair review, employ reasonable claims procedures, and to provide necessary notices and

disclosures—not solely to Blue Cross' allegedly unauthorized offsetting practices, all of which occurred prior to August 15, 2018.

We likewise find no merit to Dr. Gupta's argument that the six-year limitation period should apply due to Blue Cross' alleged fraud and/or concealment of necessary information, which if not concealed, would have given him actual knowledge that he had a claim against it under ERISA. First, we have already found that Dr. Gupta has not pled with particularity a claim sufficient to constitute fraud or concealment. Moreover, we find that Dr. Gupta had actual knowledge of the provisions he contends Blue Cross allegedly violated by February 2018, when Blue Cross advised him that it was going to withhold reimbursements of his claims for peripheral nerve block injections, and the various reasons why, as outlined in detail above, but did not file his reconventional demand until more than three years later, on July 12, 2021. To aver that Dr. Gupta did not have actual knowledge of a claim against Blue Cross for alleged breach of fiduciary duties and violations of ERISA until Blue Cross commenced its cross-plan offsetting is simply not borne out by the facts set forth in his reconventional demand. For these reasons, we find the trial court properly sustained Blue Cross' exception of prescription and dismissal of Dr. Gupta's ERISA and/or FEHBA claims.

## CONCLUSION

In conclusion and summary: (1) we reverse the trial court's ruling which sustained Blue Cross' exception of no cause of action as to Dr. Gupta's reconventional demand for breach of contract; (2) we affirm the trial court's ruling which sustained Blue Cross' exception of no cause of action as to Dr. Gupta's claims for fraud and/or negligent misrepresentation; however, in connection therewith, we remand this matter to the trial court with instructions that the trial court issue an order allowing Dr. Gupta a reasonable amount of time to conduct discovery, and thereafter, to amend his reconventional demand to state a cause of

24-CA-264                                          28

action against Blue Cross within a timeframe to be set by the trial court; (3) we affirm the trial court's ruling which sustained Blue Cross' exception of no right of action with respect to the claim he made under La. R.S. 1838; and (4) we affirm the trial court's ruling which sustained Blue Cross' exception of prescription and dismissed Dr. Gupta's ERISA and FEHBA claims.

## DECREE

For the foregoing reasons, the trial court's judgment under review is reversed in part and affirmed in part, and the matter is remanded to the trial court for further proceedings with instructions.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED FOR FURTHER PROCEEDINGS WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **FEBRUARY 12, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**24-CA-264**

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
DOUGLAS M. CHAPOTON (APPELLEE)        GARY M. CARTER, JR. (APPELLEE)          PERRY R. STAUB, JR. (APPELLANT)

### MAILED

SIERRA AMBROSE (APPELLEE)              ERICA S. AGUILLARD (APPELLEE)
ATTORNEY AT LAW                        JESSICA W. CHAPMAN (APPELLEE)
2401 WESTBEND PARKWAY                   RICHARD A. SHERBURNE, JR. (APPELLEE)
SUITE 3070                             ATTORNEYS AT LAW
NEW ORLEANS, LA 70114                  POST OFFICE BOX 98029
                                       BATON ROUGE, LA 70898